**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

KAREN KALL COFFEY,

*Plaintiff,*

*versus*

BAUSCH & LOMB CORPORATION and
LISA FAWCETT,

*Defendants.*

**COMPLAINT AND JURY TRIAL
DEMANDED**

Civil Action No.

_____

Karen Kall Coffey, (the "Plaintiff"), as and for her complaint against Bausch & Lomb and Lisa Fawcett (collectively the "Defendants"), shows this Court the following:

### NATURE OF THE ACTION

1.     This action is brought under the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. § 621 *et. seq.*; under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, ("Title VII"); under the Executive Law, Article 15 of the Human Rights Law, of the State of New York ("HRL") and Chapter 63-1 of the Rochester Municipal Code ("RMC").

2.     Further, this action seeks restitution to plaintiff of all rights, privileges, benefits, and income that she would have had but for defendant's unlawful practices.

### JURISDICTION

3.     This jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343 (3) and (4) conferring original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights; under 28 U.S.C. § 1337 conferring jurisdiction of any civil action

arising under any Act of Congress regulating interstate commerce; and under the Declaratory Judgment Statute, 28 U.S.C. § 2201.

4.      The Court's pendent jurisdiction of claims arising under New York law is also invoked.

## THE PARTIES

5.      Defendant Bausch & Lomb Company ("B&L") is an eye health company and is headquartered in Rochester, New York.

6.      At all relevant times, defendant B&L has been an employer within the meaning of, the ADEA, Title VII, the RMC and the HRL.

7.      At all relevant times, defendant Lisa Fawcett ("Fawcett") has been a party to this action within the meaning of the HRL.

8.      At all relevant times, Ms. Fawcett was an employer within the definition of the HRL and RMC.

9.      Upon information and belief, Ms. Fawcett personally participated in the discriminatory decision to terminate plaintiff.

10.     At all relevant times, plaintiff Ms. Kall Coffey was an employee of the defendant within the meaning of the ADEA, Title VII, the RMC and the HRL.

## VENUE

11.     The defendant B&L, is a corporation who is doing, or has done, business within the Western District of New York and the unlawful employment practices alleged below were committed in this judicial district.

12.     The defendant Ms. Fawcett resides in the County of Monroe, State of New

York.

13.     Ms. Kall Coffey resides in the County of Monroe, State of New York.

14.     Therefore this action properly lies in the Western District of New York, pursuant to 28 U.S.C. § 1391 (b) and (c).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

15.     Within three hundred days of the willful discrimination alleged herein, plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC").

16.     At Ms. Kall Coffey's request, on or about January 30, 2004 the EEOC issued her a Notice of Right to Sue for her charge against defendant B&L. Ms. Kall Coffey received this Notice of Right to Sue on February 3, 2004.

17.     Less than ninety days have elapsed since her receipt of that notice.

## FACTUAL BACKGROUND

18.     Ms. Kall Coffey was born on January 2, 1944.

19.     Ms. Kall Coffey was hired by defendant on or about November 30, 1987 as a Senior Market Planning Analyst. During her tenure with the defendant B&L she also held the positions of Assistant Product Manager, Product Manager and Sr. Product Manager.

20.     At the time of termination on January 17, 2002, Ms. Kall Coffey was 58 years old and was performing the job duties of an Assistant Product Manager, a Product Manager, and a Sr. Product Manager. She was also assigned the task to set the strategy for the re-launch of B&L's Pure Vision lens product.

21.     Until just prior to her termination, Ms. Kall Coffey had always been

- 3 -

considered to be a valuable employee who received praise, bonuses and salary increases for the work she did.

22.    Specifically, when evaluated within the context of the environment in which Ms. Kall Coffey worked, the success she achieved during the last two years of her employment was remarkable.

23.    For example, as a consequence of the B&L's layoffs in January 2002, in addition to her own responsibilities and functions involved with continuing the launch rollout of SofLens 66 Toric, Ms. Kall Coffey was required to assume the additional and far-reaching job responsibilities and functions for the re-launch of PureVision.  These extensive extra responsibilities were previously performed by two other individuals whose responsibilities were solely for PureVision:  a Director (Weglarz) and Sr. Product Manager (Fawcett).  At the same time, the Assistant Product Manager (Samsel) who was assigned to Ms. Kall Coffey half time during the previous year, was reassigned and not replaced.

24.    As a result, Ms. Kall Coffey shouldered the primary responsibility for and almost single handedly completed all of the considerable amount of work necessary to (1) develop and execute business and promotional planning to grow SofLens66 Toric and (2) initiate and execute the strategy and tactical plans for the re-launch of PureVision.  These two products were the future of B&L lens technology and critical to the financial success of the corporation.   SofLens66 Toric surpassed business goals under Ms. Kall Coffey's management from 1999 through Q3 2001.

25.    As a consequence of being assigned these considerably increased work responsibilities and job functions, Ms. Kall Coffey had no choice but to work a minimum of

60-hour weeks to keep up with her work demands.

26.     As Mr. Jeff McLean, VP of Marketing for B&L noted in his February 2001 nomination of Ms. Kall Coffey for the North America Achievement Award written less than a year prior to Ms Coffey's termination "[i]t was because of [Karen's] dedication and commitment that SofLens66 Toric is arguably the most successful launch in the history of North America."

27.     Ms. Kall Coffey's important experience and skills (particularly relative to other product managers) are also objectively proven by the 2001 EVA performance rating she received for her skill set and productivity.

28.     In further recognition of Ms. Kall Coffey excellent performance, in early February 2001, the Lens/Lens Care Director, Lori Overstreet ("Overstreet") advised her that because of her leadership skills and broad background and expertise on multiple product categories in the Division she would be considered for a Director's position within the coming year.

29.     During this same conversation, Ms. Overstreet admitted that no one individual (regardless how driven, competent and skilled) could manage the current workload assigned to Ms. Kall Coffey.  She then stated how Steve Schuster, President of North America Vision Care, had given her approval to immediately hire an assistant to provide Ms. Kall Coffey the long overdue help she needed to finalize the development of SofLens66 Toric and to develop and execute the strategic and tactical plans for the re-launch of PureVision, two of B & L's most critical products.

30.     However, despite Ms. Overstreet's promise to immediately hire an assistant for

- 5 -

Ms. Kall Coffey, she waited more than six months, until the last week of August 2001, to do so. At that time she hired a thirty-two (32) year old Product Manager, Lou Applebaum ("Applebaum") to allegedly assist Ms. Kall Coffey.

31. As a result of Ms. Kall Coffey's tireless devotion to her work and her concurrent neglect of every aspect of her personal life and health, as of September 1, 2001, when Mr. Applebaum started working, Ms. Kall Coffey had successfully completed 95% of the collateral work relative to the ongoing marketing efforts for SofLens66 Toric (including the 2002 marketing plan and forecast). In contrast, however, Ms. Kall Coffey's additional substantial responsibilities and workload associated with the re-launch of PureVision had begun to escalate in anticipation of the forthcoming FDA approval and initiation of the public relations campaign for the re-launch of PureVision.

32. Despite her obvious continuing need for an assistant, and Ms. Overstreet's acknowledgement of the same, the leader of the Lenses Group, Ms. Lisa Fawcett ("Fawcett"), refused to allow Mr. Applebaum report directly to Ms. Kall Coffey.

33. Ms. Fawcett, also refused to allow Ms. Kall Coffey to ask or allow Mr. Applebaum to provide her with any assistance on the PureVision re-launch project.

34. Instead, Mr. Applebaum was instructed to report directly to Ms. Fawcett and was assigned the task of completing the small amount of work left to finish on the SofLens66 Toric business for 2001, planning for 2002, and other less time-constrained activities.

35. Inexplicably, even after the budget for the marketing projects on the SofLens66 Toric business was cut off and Mr. Applebaum had very little marketing collateral work to do, defendants continually refused to allow Mr. Applebaum to provide Ms. Kall

- 6 -

Coffey any assistance on the re-launch of the time and labor intensive PureVision project.

36.     As a result, of the defendants' actions, Ms. Kall Coffey continued as she had been doing since January of 2001, tirelessly working a minimum of 60 hour weeks to perform the job functions of an Assistant Product Manager, a Product Manager and a Sr. Product Manager.

37.     Upon information and belief, in mid-2001, defendant B&L decided to reduce its workforce by laying off employees.  The layoff decisions in its North America Vision Care Marketing Department were announced January 17, 2002.

38.     Despite the exemplary work she did to develop and launch SofLens66 Toric and to develop and begin to execute the plans for the re-launch of PureVision, two of B&L's most successful products, Ms. Kall Coffey was laid off.

39.     The decision to terminate Ms. Kall Coffey, instead of another less qualified Product Manager, rested primarily with the defendant Ms. Fawcett.

40.     When Ms. Fawcett became Ms. Kall Coffey's supervisor, she was approximately 29 years old and Ms. Kall Coffey was 57 years old.  In comparison to how she treated, supervised and otherwise impacted the terms and conditions of the work of employees under the age of forty, Ms. Fawcett treated, supervised and otherwise impacted the terms and conditions of the work of Ms. Kall Coffey in an adverse and discriminatory manner.

41.     Although no reason was given to Ms. Kall Coffey for her termination, the defendant, B&L, now alleges that it eliminated hers and one other Sr. Product Manager position in January 2002.

**Facts Primarily Relevant to Ms. Kall Coffey's Claim for Age Discrimination**

42.     This above stated reason (that it eliminated Kall Coffey's and one other Sr. Product Manager's position) is clearly pretextual since at the time of her termination, her job functions and responsibilities were turned over to Lou Applebaum, who was 32 years old, had worked at B&L for less than 5 months, had had very few job responsibilities assigned to him and lacked Ms. Kall Coffey's experience and industry and product expertise.

43.     Further this proffered reason is false since within six months of Ms. Kall Coffey's termination, Mr. Applebaum was promoted into Ms. Coffey's allegedly eliminated Sr. Product Manager's position.

44.     This proffered reason is also pretextual since at the time Ms. Kall Coffey was laid off, B&L posted a notice soliciting applications to fill the other allegedly eliminated Sr. Product Manager's position.  Ms. Kall Coffey was more than qualified to assume this other Sr. Product Manager's position, which was vacated by a 40 year old woman, who B&L had targeted to be laid off with Ms. Kall Coffey on January 17, 2002.

45.     Another reason the defendants' proffered reason for Ms. Kall Coffey lay off is false centers on the January 17, 2002 lay off of yet a third Sr. Product Manager over the age of 40: Mr. Frank Harritt.  Although Mr. Harritt's job was also allegedly eliminated, immediately after his termination, a 29 year old Product Manager took over his job functions and responsibilities.  Ms. Kall Coffey was more than qualified to assume Mr. Harritt's position.  Upon information and belief, this Product Manager was then subsequently promoted into the higher level Sr. Product Manager's position previously held by Mr. Harritt.

46.     Another reason the defendants proffered explanation for Ms. Kall Coffey's

- 8 -

termination cannot withstand scrutiny, is the fact that within three months of her alleged lay off, B&L posted another notice soliciting applications to fill yet another Sr. Product Manager position.

47.     Ms. Kall Coffey was laid off without any warning or counseling that there were performance problems that placed her at risk for termination.

48.     Instead, late afternoon on the day before her termination, defendants in an attempt to justify her termination gave Ms. Kall Coffey her first poor review in all her 14 years of employment at B&L.   In light of Ms. Kall Coffey's aforementioned documented successes, this performance review is clearly pretextual.

49.     Had defendants performed and relied on an objective assessment of Ms. Kall Coffey's overall work performance, instead of having relied upon an subjective assessment of her overall work performance, she never would have been terminated in violation of the prohibitions of Federal, New York State and local laws prohibiting age discrimination.

50.     Had defendants applied its recognized criteria of service, performance and skills/experience in the assessment process it allegedly used to identify which Product Managers to lay off, Ms. Kall Coffey would not have been terminated in violation of the prohibitions of Federal, New York State and local laws prohibiting age discrimination.

51.     The defendants' pattern and practice is to discriminate against employees because of their age.

52.     As a matter of fact, a disproportionate number of older employees in B&L's Marketing Department were targeted for layoff in January 2002.

53.     For example, at the time of Ms. Kall Coffey's layoff the positions of two other

Product Managers age 40 or older were allegedly eliminated.  However, their job functions were taken over by substantially younger Product Managers.  In turn, each of these younger less experienced and qualified Product Managers were subsequently promoted into the higher level Sr. Product Manager position previously held by the older terminated employee, whose job function and position was allegedly eliminated.

54.    Moreover, the Defendant B&L now admits, that at the time of the January 2002 layoffs, another Sr. Product Manager's position held by a forty year old was eliminated. However, despite the Defendant B&L's claim, contemporaneous with its January layoffs, it actively began to recruit for a new Product Manager to fill this allegedly eliminated Sr. Product Manager's position.

55.    The decision to terminate these employees, in addition to being part of a pattern and practice of discrimination, had a disparate impact on employees because of their age.

56.    There is no legitimate business reason for the employment practice that resulted in the disparate impact, and there are alternative methods that would not result in the same disparate impact.

57.    There was no legitimate business reason to lay off Ms. Kall Coffey and replace her with a less experienced, less qualified, younger employee.

58.    There was no legitimate business reason to lay off Ms. Kall Coffey instead of letting her take over the job functions of the vacated Sr. Product Manager and/or Product Manager position.

59.    There was no legitimate business reason to lay off Ms. Kall Coffey instead of

- 10 -

letting her take over a Product Manager's position held by a less experienced, less qualified, younger employee.

**Facts Primarily Relevant to Ms. Kall Coffey's Claim of Reverse Race Discrimination**

60.     Had defendants relied on an objective assessment of Ms. Kall Coffey's overall work performance, she never would have been terminated in violation of the prohibitions of Federal, New York State and local laws prohibiting discrimination on the basis of race.

61.     Had defendants applied its recognized criteria of service, performance and skills/experience in the assessment process it allegedly used to identify which Product Managers to lay off, Ms. Kall Coffey would not have been terminated in violation of the prohibitions of Federal, New York State and local laws prohibiting discrimination on the basis of race.

62.     Upon information and belief, Ms. Monica Voll, an African American employee, who at all times relevant held the position of Product Manager, was initially selected to be laid off on January 17, 2002.

63.     Upon information and belief, because the defendants were fearful that Ms. Voll would commence a law suit against them for racial discrimination if she was laid off they made the decision to terminate Ms. Kall Coffey instead.

64.     Upon information and belief, instead of terminating Ms. Voll, the defendants decided not to do so because she was an African American.

65.     But for defendants' illegal consideration of race, Ms. Voll, instead of Ms. Kall Coffey, a Caucasian, would have been laid off in January of 2002.

66.     There was no legitimate business reason to lay off Ms. Kall Coffey instead of

Ms. Voll, a less experienced, less qualified, younger African American employee.

## FIRST CAUSE OF ACTION
### *Age Discrimination in Employment Act*

67.    Plaintiff repeats and realleges the allegations expressed above as if more fully set forth herein.

68.    Defendants intentionally violated the ADEA.

## SECOND CAUSE OF ACTION
### *Title VII - Reverse Race Discrimination*

69.    Plaintiff repeats and realleges the allegations expressed above as if more fully set forth herein.

70.    Defendants intentionally violated Title VII.

## THIRD CAUSE OF ACTION
### *New York State Human Rights Law*

71.    Plaintiff repeats and realleges the allegations expressed above as if more fully set forth herein.

72.    Defendants intentionally violated the HRL.

## FOURTH CAUSE OF ACTION
### *Rochester Municipal Code*

73.    Plaintiff realleges the above paragraphs as if fully restated herein.

74.    Defendants intentionally violated their obligations under the RMC prohibitions on discrimination and are liable to plaintiff.

**PRAYER FOR RELIEF**

**WHEREFORE, THE PLAINTIFF PRAYS THAT THIS COURT:**

    a.    declare defendants' conduct complained of herein to violate her rights as secured by ADEA, Title VII, HRL and RMC;

    b.    permanently enjoin defendants and its owners, officers, management, personnel, employees, agents, attorneys, successors and assigns and those acting in concert therewith from any retaliatory conduct violating all plaintiff's rights as secured by, ADEA, Title VII, HRL and RMC;

    c.    award plaintiff equitable relief of all back pay and benefits up to the date of reinstatement;

    d.    reinstate plaintiff to employment with defendant B&L or, in the alternative, award plaintiff front pay and including all the compensation and value of the benefits of employment that she would have been entitled to had she not been terminated, for a period of time after judgment that the Court deems just and proper;

    e.    award plaintiff compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other such nonpecuniary losses under Title VII, HRL and RMC and any other damages which may be awarded under 42 U.S.C. § 2000e-5(g);

    f.    award plaintiff punitive damages;

    g.    award plaintiff liquidated damages;

    h.    award plaintiff pre-judgment interest;

    i.    award plaintiff all costs, expenses, disbursements, expert witness fees and attorney's fees in prosecuting this action;

    j.    an award for any and all other economic loss; and

    k.    grant such other relief as this Court may deem just and proper.

Dated:   April 29, 2004                    **DOLIN, THOMAS & SOLOMON LLP**

                                           By: _____
                                           **Lonny H. Dolin, Esq.**
                                           *Attorneys for Plaintiff*
                                           135 Corporate Woods
                                           Suite 130
                                           Rochester, New York 14623
                                           Telephone:  (585) 272-0540

- 14 -